## AMERICAN ROLL-PAPER CO. *et al.* v. WESTON.

*(Circuit Court, S. D. Ohio, W. D.  April 4, 1891.)*

1. PATENTS FOR INVENTIONS—COMBINATION.
   Letters patent No. 301,596, granted July 8, 1884, to Richard W. Hopking for an improvement in roll-paper holders and cutters, the principal features of which are a hanger or bracket and a yoke, preferably in one piece, passing through a hole in the hanger or bracket, having its arms bent to form a spring, and its ends curved to pass a short distance into the roller or core, thus suspending the roll of paper and allowing it to turn free on the ends of the yoke, in combination with a blade having its ends bent at right angles, so as to guide the paper when unrolled, in order that it may be cut straight, connected with the bracket by means of a knife yoke, made preferably of one piece, and passing through eyes or staples driven into the bracket and two coil springs wound on the knife yoke, and so arranged as to continually exert their force in pressing the knife against the roll, is a meritorious invention, though every element of the combination is old.

2. SAME—ANTICIPATION.
   Such invention is not anticipated by any device intended to accomplish a similar result in which the element of a cutting edge pressed against the roll of paper, so that the loose end may be torn off by pulling it across the edge, and at the same time operating as a brake to check the motion of the roll, is wanting.

3. SAME—INFRINGEMENT.
   Defendant's device does not employ a spring for holding the cutter against the roll, but makes the cutter itself heavy enough to serve for that purpose. *Held*, that this is a mere mechanical equivalent, and infringes plaintiff's patent.

In Equity.  Bill for injunction.

*Geo. H. Knight*, for complainants.

*Arthur Stem*, for defendant.

SAGE, J.　This is a suit for the infringement of the second and fifth claims of letters patent No. 301,596, granted July 8, 1884, to the complainant Richard W. Hopking, for an improvement in roll-paper holders and cutters.　Mr. Hopking holds the legal title to the patent, but the equitable title is in the complainant, the American Roll-Paper Company, under an agreement dated September 12, 1884, whereby that company is vested with the exclusive right to make, use, and sell the patented machines.

The patentee states in his specification that the invention consists—

"*First,* in the combination of a hanger or bracket and spring yoke which is adapted to spring into and carry a solid core or roller upon which is mounted a roll of paper; *second,* in the combination with a roll of paper of a hanger or bracket and a spring knife; 　*　*　*　*fifth,* in the combination with a holder or bracket of a knife yoke or carrier having springs so adjusted as to keep the knife to its use."

The claims alleged to be infringed are the second and fifth, which are as follows:

"*Second.* The combination, in a roll-paper holder and hanger or bracket and a spring knife substantially as set forth."

"*Fifth.* In a roll-paper holder, a knife carrier or yoke substantially such as described, provided with means for keeping the knife to its work."

The object of the invention is to provide means by which roll, wrapping, or other paper may be used and handled in a convenient way, and by which any length or strip required may be torn or cut from the roll, which is projected or suspended from the hanger or bracket by means of a yoke, preferably of one piece, and passing through a hole or slot in the hanger or bracket.　It has its arms bent to form a spring, and its ends curved to pass a short distance into the roller or core, thus suspending the roll of paper, and allowing it to turn freely on the ends of the yoke. A blade, having its ends bent at right angles, so as to guide the paper when it is unrolled, in order that it may be cut straight, is connected with the bracket by means of a knife yoke, made preferably of one piece, and passing through eyes or staples driven into the bracket.　The ends of this yoke are riveted to the knife, as shown in the specification.　Two coil springs wound on the knife yoke are so arranged as to continually exert their force in pressing the knife against the roll.

The patentee states that by his invention the paper is easily and conveniently handled, and any length of sheet may be torn by laying hold of the loose end and pulling it across the knife edge, the bent ends of the knife holding the paper true, and insuring a straight cut.

He states that the bracket may be bolted to or suspended from the under side of counters, shelving, or other fixtures, or it may be fastened against the wall, in which case the roll would project at right angles to the wall, and braces or shoulders would have to be provided on the bracket or hanger for the purpose of supporting or keeping the spring yoke horizontal, as is shown in the drawings.

Under the defense of anticipation the defendant relies, first, upon patent No. 12,764, April 10, 1855, to Duryea, for improvements in card

exhibitors and distributors. The cards are printed at suitable intervals on a long strip of paper, which is wound upon a roller and placed in a box, provided with an opening through which the end of the strip containing the cards passes, so that it can be laid hold of and pulled out the required distance when it is desired to take off a card. This opening is provided with a hinged spring plate or holder for retaining the end of the printed slip in place, and for holding the strip after it has been drawn out far enough, also serving as a guide by which to tear off the ends. There is not shown here a knife pressing against the roll to act as a brake therefor. There is nothing to check the motion of the roll when the operator ceases to pull on the end of the paper, and this machine does not in my judgment, anticipate the combination of the second and fifth claims of the complainant's patent.

But it is argued for the respondent that, if it required invention to add a brake to the paper roll of the Duryea patent, a spring brake for this purpose is shown in patent to Haehnlen, No. 208,906, of October 15, 1878. This patent relates to a ticket reel, in which several rolls of tickets, printed on perforated strips of paper, are supported inside of a box upon journals pivoted thereto, and a spring which presses against the outer surface of the roll of paper to act as a friction brake is fixed to the side of the box. The paper passes out through slots in the case, which may form the tearing edge. There is nothing in this machine to prevent the free end of the strip of paper from moving back into the box when the ticket is torn off, and it would be likely to go back into the box if the edge of the slot were used as a tearing edge. This machine shows no knife serving as a brake and cutting edge, and is not an anticipation.

The next device claimed to be in anticipation is a paper slitting machine manufactured under patent to Clark, No. 129,319, July 16, 1882, in which a series of knives is employed acting upon a roll of paper to divide a sheet lengthwise into narrow strips. These knives are arranged in a bar resting upon the roll of paper, and this bar is secured to hangers which are pivoted to suitable supports. Now, counsel say that by removing the knives the bar could be used as a convenient tearing edge, and that the device would then present all the elements of complainant's patent, combined in substantially the same way, excepting that the bar is weighted to press the knives to the paper, instead of being acted upon by a spring, these devices being equivalents. This seems to me to be a fair illustration of the facility with which, after a new improvement has been perfected, suggestions covering its patentable features may be pointed out in older devices, but I am not able to see that there is anything in the Clark patent which, rightly considered, anticipates the complainant's improvement.

The same may be said of the Toof patent, which is for a machine designed to hold a single sheet of paper, and to present it line by line to a copyist. One end of the paper is clamped between the edges, and passes under an elastic bar or index, but this bar is not so constructed as to adapt itself to varying sizes of rolls of paper, or act as a brake. It re-

quires to be adjusted by hand. The machine is therefore not adapted to hold roll paper, and could not be made to serve the use of complainant's device.

Law's patent, No. 229,001, June 22, 1880, is another copy-holder, in which two rolls are employed, one guided in slots in the supports, so as to rest upon the paper as a friction brake, the other mounted on side supports, so as to turn freely, and intended to receive a strip of paper. Arms are pivoted to the frame, and carry a cross-bar. These arms bear upon the pivot of the adjustable upper roller; and the cross-bar is intended to hold the paper in place after it has passed the roller, and by its weight to press upon the arms, which act as levers to bear down the upper roller. The paper passes from the rear between the rollers, and is held down upon the cross-bar, F, by the bar, E, which also serves as a mark to guide the eye of the copyist upon the paper from which the copy is made. The paper is advanced line by line by turning the handle of the lower roller. This machine contains no roll of paper, has no knife pressed against the surface of the roll of paper, and is not, in my opinion, an anticipation.

Next is the Eaton patent, September 25, 1883, No. 285,398, for a roll-paper holder and cutter, with a roll of paper journaled in a frame so pivoted to the side of the wall, at a point above the roll, that the weight of the roll holds its outer surface against the face of the wall. A rubber band, designed to act as a brake to prevent the too easy unwinding of the paper, is connected to the pivot and to the frame below the roll, so that the band lies between the surface of the roll and the wall. The paper is unwound by pulling its free end over the end of the serrated knife, which is pivoted to the frame, and drawn into position when the paper is torn off. The knife blade in this machine never touches the surface of the roll. The roll is always in contact with the wall, and held there by its own weight, so that the friction is constantly changing as the size of the roll diminishes. This patent does not anticipate the complainant's.

The Moore patent, No. 297,618, dated April 29, 1884, is for a paper-holder. In this patent, also, the roll is designed to bear against the wall, so that the friction diminishes as the roll diminishes in size, and the knife is not so constructed or applied as to produce the necessary friction upon the roll required and effected in the complainant's machine. This patent, for the purpose of anticipation, speaks from the date of its issuance, which is subsequent to the date of complainant's application for his patent.

See *Howes* v. *McNeal*, 5 Ban. & A. 77.

The patent to Burgess, No. 212,893, March 4, 1879, for an improvement in tension devices for thread spools, is also relied upon as an anticipation. There is no cutter in this device, nor any frame by which the spool may be supported so as to turn upon its axis free from contact with anything except a cutting blade, and I do not find in it the elements of the second or fifth claims of the complainant's patent.

The Harding patent, No. 267,884, November 21, 1882, is a thread

guard and cutter, the object being to provide a small and convenient device for holding the free end of the thread on the spool, so as to prevent accidental unwinding, and to provide a means whereby the thread may be easily cut when the desired length is unwound. It consists of a piece of bent metal having eyes in its ends clamped around the spool of thread, the loose end of the thread passing through one of the eyes, and the other eye serving as a cutter. This is not adapted for a paper holder and cutter. It has no frame by which the spool is held so that it may revolve freely, and there is no need of such a frame for a thread guard. It has no knife hinged to a frame-work, and it does not contain the elements of the second and fifth claims of the complainant's patent, nor has it the functions of either of those claims.

The Newbury patent, No. 293,349, dated February 12, 1884, is for a paper-holder. This patent would not anticipate, even if it did contain the elements of the claims sued upon, for the reason that the evidence carries the date of the Hopking invention back to a period prior to the date of the Newbury patent. The case of *Howes* v. *McNeal*, already cited, is in point. But, aside from this consideration, it does not anticipate. It is a paper-holder in which the roll of paper lies loosely in the bottom of a trough, the free end of the paper passing out through an opening in the box over a knife, so pivoted to the frame as to turn down into the position shown in the drawing of the patent, when the sheet of paper is drawn down for the purpose of tearing it off against the knife edge. The effort required to draw the paper out of the box depends upon the size of the roll. The weight of the roll forces the loose end of the paper against the bottom of the trough, and in pulling the paper out it must slide on the bottom of the trough, the ease with which it slides depending upon the weight of the roll. If that is heavy, the paper is likely to tear, but it can be drawn out; if light, the paper can be drawn out so easily as not to be cut off with the knife. This machine is not adapted and could not be used for wrapping paper. It does not contain a knife pressed against the roll, nor against the loose end of the paper, and it does not anticipate.

The Newbury patent No. 193,175, July 17, 1877, is for a paper-holder in which the roll is supported upon an axis, so that the sheet may be pulled out the desired length and torn off, the paper being operated by one hand, and a swinging blade by the other, against which the paper is torn. There is nothing to arrest the motion of the roll of paper when the operator ceases pulling on its free end, nor is there anything to hold the free end of the paper in its place after it is cut, and this patent cannot be recognized as an anticipation.

The English patent to Henry Cross, No. 1,800, dated May 9, 1877, for fare-indicating apparatus, shows a device designed to hold tickets printed on rolls of paper, perforated transversely at regular distances apart. Each compartment of the apparatus contains a roll. At the front of the compartment is an aperture through which the ticket strip is drawn, and the ticket then torn off and given to the passenger in receipt for his fare. A revolving coil of wire fitted just within each aperture pre-

vents the ticket strip from being drawn backward. The roll is free to revolve upon its axis, and there is no cutting blade pressing against its surface to prevent its motion. The free end of the paper passes over a rod, and through the slot in the side of the box, and between two blades, which bear close together, and allow the ticket to be caught hold of, but prevent its being reinserted in the box. These blades, while they serve to hold a strip of tickets, are not intended to serve as cutting knives, the strip of tickets being perforated for the purpose of permitting them to be torn off readily outside the outer edges of the blades. If the blades were used as cutting edges they could only be used once, for the reason that the paper would be torn off close to the edge, and could not be caught again for the purpose of drawing out a second ticket. There is no anticipation here.

The Wheeler patent, No. 297,043, April 15, 1884, is subsequent to the date of complainant's application for his patent, and might be dismissed with that remark, but it is nothing more than a paper-holder in which a roll of paper is pivoted to a yoke, the yoke being pivoted against the side of the wall, and the roll pressed against the wall by its own weight. It has no cutter of any kind, and it would not anticipate if there were no objection on account of its date.

The patent to Jerome, No. 248,323, October 18, 1881, shows a device for tearing wrapping paper from continuous roll sheets. In one form of construction the roll is designed to lie upon a counter or shelf with a straight edge resting on the free end of the paper, and connected by pivoted arms to the axis of the roll paper. The objection to this form of construction is that the freedom with which the roll would turn would continually increase as the size diminished, and if the roll were heavy the paper never could be pulled out by taking hold of its free end. Another construction shows the roll of paper journaled in a frame which rests on a counter with a straight edge journaled to the frame, or pivoted to the frame, and resting on the end of the paper. The roll is free to revolve upon its axis, and there is nothing to prevent its overrunning and turning too far when the paper is pulled out. In neither construction is there a knife in contact with the roll of paper serving as a brake or tension device to prevent the unwinding too easily, and serving at the same time as a cutting edge against which the paper may be torn. It does not therefore contain the elements of the combinations of the second and fifth claims of the complainant's patent, nor has it the functions of either of those combinations. This Jerome patent could only be operated by drawing the paper out with one hand, and pressing down on the straight edge or rule with the other, so as to hold it firmly against the paper beneath it when the unwound paper in front of the straight edge or rule can be torn off by drawing the paper against the sharp front edge. It is an exceedingly cumbersome and inconvenient device when compared with the complainant's, which it by no means anticipates.

The Fitch English patent of 1883, No. 3,988, was disposed of by the stipulation of the parties that the date of its sealing was the 13th of

November, 1883, which is subsequent to the date of the complainant's invention. See *Smith* v. *Vulcanite Co.*, 93 U. S. 486.

The remaining devices relied upon as anticipations, and in support of the defenses of prior use and of non-invention, were used in the summer of 1883, at Barr's dry-goods house in St. Louis. In June of that year there was introduced into that house the autographic register, a device for holding double rolls of paper, and provided with a straight edge for tearing off one or more of the sheets. About the same time roll paper for wrapping purposes was also introduced into that store. It was supported substantially, if not identically, as in complainant's patent. The complainant Hopking was then a salesman in that store. His testimony is that his conception of his invention came to him when he saw those rolls of wrapping paper; that it came to him at once that what was wanted was a cutting knife, which he then went to work trying to "get up."

Robert Herries was an employe in the woolen department of Barr's store in 1883, when roll paper for wrapping was introduced. His testimony is that he straightway constructed a device, a copy of which is in evidence, which consisted in arranging between the upright end supports of the roll a wooden ruler, beveled on one side, and notched to fit the yoke, so that it had a vertical play between the supports and above the top of the roll. Mr. Herries testifies that in using this device both hands were necessary, one to hold the knife or cutter down on the paper, the other to tear the paper off against the knife. Only two of these devices were made. They were cast aside when the complainant's machine was constructed, and never used afterwards.

There is also testimony that a similar device was gotten up by another employe in the same house, named Bolger, who died October 22, 1883. This device consisted of a small board provided with screw eyes, one at each corner, and rubber bands were placed between these, and attached to the support of the roll, and intended to hold the cutter or wooden knife against the paper roll by the tension of the rubber band. With reference to Bolger's device, the weight of testimony is that it was subsequent to the date of complainant's invention; but, if it should be allowed to be earlier, the testimony is clearly that it did not work, for the reason that in tearing off the paper the cutter would snap up against the frame-work above. It was used not more than six weeks, and was a failure, for the reason already stated, and for the further reason that it got out of order very easily. I cannot recognize either of these devices as anticipations or as available in any way as defenses. The rolls of wrapping paper in use at Barr's store were provided with no means for tearing off such portions as might be needed, and their use was attended with such inconvenience that these devices were resorted to as temporary expedients for relief. No one excepting Hopking went to work to devise a contrivance that would be permanent and effective. He succeeded in perfecting a new and useful organization, which was the first to completely obviate the difficulties attending the use of roll paper for wrapping purposes. It is in my judgment an ingenious and useful de-

vice. It saves paper and space, and time and labor. It is readily operated with one hand, leaving the other free for holding the package to be wrapped, which is a decided convenience and advantage. The great and constantly increasing demand for it, dating almost immediately from its introduction, is strong testimony in its favor. It only requires to be placed side by side with the prior devices to make its superiority apparent at a glance. Now, it is true that every element of the combination is old, but the result is a new and useful organization, which cannot be regarded as merely an aggregation. I am satisfied that it displays invention; that the patent for it is valid; and that the defendant is an infringer. It is true he does not employ a spring for holding the cutter to its place against the roll, but he substitutes what is an equivalent by making the cutter heavy enough to serve as a weight sufficient for that purpose.

The decree will be for the complainants.