### FLEMING & KEEVERS CO., Inc., v. GOODMAN et al.

District Court, S. D. New York.
July 19, 1928.

Cavanagh & James (by Richard B. Cavanagh and Henry J. Lucke), of New York City, for plaintiff.

Hoguet & Neary (by Daniel L. Morris), of New York City, for defendants.

GODDARD, District Judge.

Suit by the plaintiff, the owner of patent No. 1,326,153 issued to William J. Fleming for shoe buckle support, dated December 23, 1919, and now owned by the plaintiff. The bill, which is in the usual form, asks for an injunction and an accounting.

Plaintiff contends that all of its five claims are infringed by defendants. They read as follows:

"1. A buckle supporting member having two spaced and connected members between which the vamp of a slipper may be received to detachably connect the member thereto.

"2. A supporting means for buckles and the like, comprising, a part for attachment to the buckle and a second part in the nature of a clip having two spaced jaws to respectively slip over and under the vamp of a slipper to detachably connect said means thereto.

"3. A supporting means for buckles and the like, comprising, a part for attachment to the buckle and a second part in the nature of a clip having two spaced spring jaws to respectively slip over and under the vamp of a slipper to grip the same and detachably connect said means thereto.

"4. A support for buckles and the like, comprising a member bent backwardly upon itself to provide two spaced parts to engage the outer and inner surfaces of the vamp of a slipper or the like, the rear edge of said member and the inner part being curved to substantially fit the instep of the foot, and a part provided on said member to support the buckle.

"5. In combination with a shoe or the like, a buckle supporting member having a part for attachment to the buckle and another part for detachable connection to the shoe, said last named part comprising two relatively closely spaced spring jaws between which the vamp of the shoe is received and gripped to detachably connect said support thereto."

The defendants' holders are sold to the trade apart from the buckles or attached as the customer may desire. Plaintiff's buckle holder comprises a part 10 (referring to patentee's drawing) for attaching the buckle and a clip portion, part 11, for attachment to the pump. The clip includes two closely spaced jaws between which the vamp of the pump is held. The clip is curved to conform to the instep and curved to conform to the curved edge of the vamp; this formation of the clip tends to hold it in the center of the pump and is of thin metal to avoid discom-

fiture to the wearer. The jaws of the clip engage the vamp with a spring action, but patentee states "that such spring action although preferred is not necessarily essential for all purposes for the clips, though loosely engaging the vamp, would be held in place by the foot." The clip is formed from one piece of thin metal, one end of which is bent back upon itself to form the jaws and the other end is bent up between the jaws to afford the support, part 10, which holds the buckle. The jaws, so the patentee states, "are preferably severed to allow independent spring action thereof * * * and to reduce to a minimum the amount of metal to be placed within the shoe." This buckle holder may be slipped on and off the vamp while the pump is worn, and does not damage the pump.

The defendants' device consists of a thin piece of metal bent at one end so as to form two spaced jaws which form the clip and the other end bent back to form a support for the buckle to which it is permanently fastened. The clip itself is curved like the plaintiff's clip to conform to the instep and the curve of the vamp in the pump. On each of the jaws of the defendants' clip is a small sharp prong.

Defendants admit the use and sale within the statutory period within the Southern District of New York of buckle supports identical with those shown by Plaintiff's Exhibits 1, 2, 3, and 4, and also that plaintiff had given to the defendants actual notice of the alleged infringement. The defendants set up as defenses the invalidity of plaintiff's patent, and if valid, that it was not infringed.

In 1919, William J. Fleming was a retail shoe dealer in Northampton, Mass., and finding that many of his customers who bought women's pumps desired to have an ornamental buckle attached and that this generally meant that one of his employees would have to sew them on for the customer, he discussed the problem with his friend, Mr. Keevers, who was an experienced mechanic, with the view of devising a method of fastening a buckle to the pump without the necessity of stitching it on, and at the same time to provide a fastening device which would permit the buckle to be readily detached from the pump. Subsequently they produced, and on December 23, 1919, obtained, a patent for the device now under consideration and alleged to have been infringed by the defendants. Upon filing their application for the patent, they, Mr. Keevers and Mr. Fleming, became associated and together they borrowed $2,000 from a local bank to be used in manufacturing their device and introducing it among the shoe deal-

ers in New England. Mr. Keevers testified that owing to lack of capital they were compelled to curtail their efforts until the spring of 1925, when their financial resources were rehabilitated, and moreover, at that time, he stated the market was ripe for pushing the invention because of the growing fashion of wearing pumps by women; that during that year they succeeded in introducing their buckle holder to the extent of making gross sales between July and December of over $50,000; that in the latter part of October of that year they learned that the defendants had placed their alleged infringing device on the market, with the result that plaintiff's gross business dropped from upwards of $50,-000 for six months in 1925, to a little over $27,000 in 1926 and to $18,000 in 1927.

■ The sole alleged anticipation advanced by the defendants against the patent in suit is a foreign reference—the French patent to Hirth No. 407,819, dated March 11, 1910. It does not appear that the Hirth structure was very generally used. Under the settled rule a foreign patent is to be strictly construed. Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Westinghouse Air-Brake Co. v. Great Northern R. Co. (C. C. A.) 88 F. 258. In Van Heusen Products, Inc., et al. v. Earl & Wilson et al. (D. C.) 300 F. 922, 930, Judge Learned Hand, when considering the sufficiency of the disclosure of British patents for the purpose of anticipating the Bolton patent, stated: " * * * if it were true that any multiple-ply interwoven fabric made into a collar would, in Bolton's words, inevitably 'maintain its shape without the employment of starch,' I should say that Willard's disclosures were an anticipation, because one had only to practice it as it reads and one would get the present collar. But this is not the truth. Willard had no such purpose in mind, and one might go on forever following his patents, without ever making a starchless stiff collar. True, one might by accident hit upon a properly close weave and interweave, but it would only be by accident. To be a proper anticipation, a reference must go further than that; it must tell you how you can get with certainty the result you are after."

The Hirth patent consists of two arms hinged to the ends of a crosspiece which arms fold over and fasten together around the bowknot when the shoe lace is tied forming a clasp to prevent it from becoming untied. On the lower side of this so-called buckle, but more accurately described as clasp, is an arm, f, which is slipped between the lace and the tongue of the shoe or over the top of the tongue so that the foot is protected from contact with the holder by the tongue. The purpose of this "hook f" or arm is obviously not to secure the clasp, or, as described in the Hirth patent, the buckle, but to prevent the bowknot from twisting. In the Hirth patent the clasp or buckle is held on the shoe by its being clasped around the bowknot which prevents the clasp from falling off and under the arm, f. Clearly, Hirth's purpose was to prevent the knot from untying by securing it with this clasp or buckle. The arms of the clasp might, of course, be made ornamental, but that was incidental to Hirth's main purpose of securing the knot. Hirth's device was not intended or adapted for fastening a buckle to a pump; its purpose was to secure the knot on a lace shoe so that it would not become untied.

Bearing in mind that the "boucle" referred to in Hirth's French patent is not a buckle of the nature referred to in the Fleming patent or adapted to support such a buckle, but is a clasp fastening to the shoe lace, it seems to me that Hirth is not an anticipation of any of Fleming's claims. I do not think that the Hirth patent discloses the idea of the buckle support which Fleming produced, and certainly no one, although the trade was looking for a detachable buckle support, produced anything like plaintiff's buckle support until it did so in 1919; yet Hirth's patent had been issued in 1910.

The defendants have cited several references to show the "state of the art": The patents to Cohen, 1,053,974; Frank, 1,007,084; Keighley, 1,029,371; and Thomas, 1,282,652. These are devices which are permanently fastened to the shoe by stapling or sewing, or which require perforation of the shoe. Another group, consisting of patents to Brand, 542,357; British patent to Parsons, 23,684; and British patent to Morgan, 121,629, which are fastened on the shoe and are used to secure a knot or the ends of the shoe lace and differ essentially from plaintiff's device. Other groups consist of Diamond, 397,704; Haskell, 370,382; and Burckhart, 1,079,209. The Diamond patent is for a double hook which forms a trouser support intended to go on the back of the shoe to hold up the lower end of the trousers. The patent to Haskell is a card or label holder; the patent to Burckhart is an index tab. The Thomas and Burckhart patents are cited as references against the Fleming application and were subsequently withdrawn or abandoned as such.

■ It seems to me that in view of the state of art and in view of the fair amount of com-

mercial success which plaintiff's device has had, that the rule in Kurtz et al. v. Belle Hat Lining Co. (C. C. A.) 280 F. 277; H. C. White Co. v. Morton E. Converse & Son Co. (C. C. A.) 20 F. (2d) 311, should be invoked in favor of the plaintiff and its patent held to be valid.

The manner of fastening the support to the buckle or whether they be fastened together permanently or temporarily is immaterial in plaintiff's patent, the patent providing that the buckle may be secured to the support "by any suitable means." Clearly claims 1, 2, and 4 of plaintiff's patent read on defendants' device and are infringed by it. Claims 3 and 5 provide for "spaced spring jaws." The patent states: "Such action, although preferred, is not necessarily essential for all purposes for the clips even though loosely engaging the vamp would be held in place by the foot, as shown in exaggerated form in Fig. 5, wherein f represents a fragment of a foot in place in a pump p."

While the jaws of defendants' device are made of a more pliable metal with a small prong on each jaw, it seems to me that this is merely a colorable change of form, for the defendants' device performs the same gripping function as that of plaintiff's and is actually held in place by gripping the vamp and by the foot, as is plaintiff's, and is a mere mechanical equivalent. "Pressure in a machine may be produced by a spring or by a weight; and where that is so, the one is a mechanical equivalent of the other." Imhaeuser v. Buerk, 101 U. S. 647, 656, 25 L. Ed. 945. American Roll-Paper Co. v. Weston (C. C.) 45 F. 686; A. Schrader's Sons, Inc., v. Wein Sales Corporation (C. C. A.) 9 F. (2d) 306. Therefore claims 3 and 5 are infringed, as well as claims 1, 2, and 4.

Accordingly, the plaintiff is entitled to the usual decree providing for an injunction and accounting.