## CRAWFORD v. HEYSINGER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued November 29, 1887.—Decided December 12, 1887.

Assuming that claims 1 and 2 of reissued letters-patent No. 9803, granted July 12, 1881, to George W. Heyl, assignee of Henry R. Heyl, the inventor, for an "improvement in devices for inserting metallic staples," are valid, they are not infringed by the "Victor tool," made under and in accordance with letters-patent No. 218,227, granted to William J. Brown, Jr., August 5, 1879, and a second patent, No. 260,365, granted to the same person, July 4, 1882.

As to claims 1 and 2 of that reissue, namely, "1. The combination of the stationary staple-support or anvil A', and the sliding staple-guide B, with the reciprocating slotted or recessed hammer, operating to insert a staple

through layers of stock to be united, and simultaneously bend over its projecting ends, substantially as and for the purpose set forth.   2. In a device for inserting metallic staples, the combination of the staple-guide B, anvil A', spring D, and reciprocating driver, provided with the knob G, the whole arranged to operate substantially as and for the purpose set forth," it must, in view of the language of the claims, and of the state of the art, and of the limitations imposed by the Patent Office, in allowing those claims, be held, that the staple-support or anvil is required to be stationary, and the slotted or recessed hammer or driver to be reciprocating.

In the "Victor tool" the anvil is movable and the hammer or driver is stationary.

BILL IN EQUITY to restrain alleged infringement of letters-patent, and for an accounting.   Decree for complainants.   Respondent appealed.   The case is stated in the opinion of the court.

*Mr. Hector T. Fenton* for appellant.

*Mr. Joshua Pusey* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a bill in equity filed in the Circuit Court of the United States for the Eastern District of Pennsylvania, by Isaac W. Heysinger, Christian H. Hershey, and J. Loren Heysinger, against James P. Crawford, founded on the alleged infringement of reissued letters-patent No. 9803, granted July 12, 1881, to George W. Heyl, assignee of Henry R. Heyl, the inventor, for an "improvement in devices for inserting metallic staples," the application for the reissue having been filed May 10, 1881, and the original patent, No. 195,603, having been granted to Henry R. Heyl, September 25, 1877, on an application filed September 20, 1877.   Henry R. Heyl assigned the original patent to George W. Heyl, March 20, 1878, and George W. Heyl assigned the reissued patent to the plaintiffs, November 23, 1881.   This bill was filed June 9, 1883.   The answer of the defendant sets up as defences the invalidity of the reissue, want of novelty, and non-infringement.   After issue joined, proofs were taken, and the Circuit Court, in November, 1883, entered

an interlocutory decree, adjudging the reissued patent to be valid as respects claims 1 and 2, and that those claims had been infringed by the defendant, and awarding a perpetual injunction, and referring it to a master to take an account of profits and damages. On his report, a final decree was entered, in May, 1884, in favor of the plaintiffs, for $225.75 damages and for costs.

In order to consider any question involved as to the reissue, it is necessary to compare the specifications of the original and reissued patents. They are here placed in parallel columns, the parts of each which are not found in the other being in italics, the drawings in the two being substantially alike, with only immaterial differences in the lettering :

| *Original.* | *Reissue.* |
|---|---|
| . " To all whom it may concern: Be it known tha'; I, Henry R. Heyl, of the city and county of Philadelphia and State of Pennsylvania, have invented a new and useful improvement in paper-fasteners, which improvement is fully set forth in the following specification and accompanying drawings, in which Figures 1 and 5 are side elevations of the fastener embodying my invention. Fig. 2 is a vertical section in line *x x*, Fig. 1. Fig. 3 is a side elevation, partly sectional. Fig. 4 is a horizontal section in line *y y*, Fig. 1. Similar letters of reference indicate corresponding parts in the several figures. | " To all whom it may concern : Be it known that I, Henry R. Heyl, of the city and county of Philadelphia and State of Pennsylvania. have invented a new and useful improvement in paper-fasteners, which improvement is fully set forth in the following specification and accompanying drawings, in which Figures 1 and 5 are side elevations of the fastener embodying my invention. Fig. 2 is a vertical section in line *x x*, Fig. 1. Fig. 3 is a side elevation, partly sectional. Fig. 4 is a horizontal section in line *y y*, Fig. 1. Similar letters of reference indicate corresponding parts in the several figures. |
| " My invention consists of an implement of the form of | " My invention consists of an implement of the form of |

a hand-stamp, by which metallic staples may be forced through sheets of paper documents, and secured by clinching the legs on the reverse side.

" Referring to the drawings, A represents a stationary anvil, which is secured to or formed with an arm rising from a suitable stand of convenient form for use upon a writing-desk; and B represents a sliding guide-block fitted to the anvil A by a sliding joint, and having grooves C C, which match with the tongue of the anvil, the upper face of the block being flat. The normal position of the guide B is elevated, and, in order to keep it in this position, or from dropping prematurely, I employ a spring, D, which may press up under the guide, or a spring, D', which may press against it, and thus produce the necessary friction. E represents a reciprocating driver, whose under face is flat, and in the same is a concave recess, F, said driver having a knob, G, for receiving the blows of the hand, and provided with a spring, H, for causing the return or elevation of the driver.

a hand-stamp, by which metallic staples may be forced through sheets of paper *or* documents, and secured by clinching the legs on the reverse side.

" Referring to the drawings, A' represents a stationary anvil, which is secured to or formed with an arm rising from a suitable stand of convenient form for use upon a writing-desk; and B represents a sliding guide-block fitted to the anvil A' by a sliding joint, and having grooves C C, which match with the tongue of the anvil, the upper face of the block being flat. The normal position of the guide B is elevated, and, in order to keep it in this position, or from dropping prematurely, I employ a spring, D, which may press up under the guide, or a spring, D', which may press against it, and thus produce the necessary friction. E represents a reciprocating driver, whose under face is flat, and in the same is a concave recess, F, said driver having a knob, G, for receiving the blows of the hand, and provided with a spring, H, for causing the return or elevation of the driver.

"The operation is as follows: A staple is placed within the grooves C C, with its crown resting on the anvil A, the points thus being *upward.* The papers to be united are now placed *upon the face of the guide B over the staple-points,* and, by a sharp blow of the hand upon the knob G, the driver is forced downward upon the papers. *The guide B gives way, and* the staple-legs come *up* through the papers into the recess F, where they are bent over *preparatory to the final clinching. The hand is now released from the knob of the driver, the latter then rising, and the papers are drawn somewhat forward, until the staple-crown rests upon the face of the guide B, when another blow is imparted to the driver, and the flat portion of its face descends forcibly on the staple-legs, so as to bend the latter close to the paper, thus completing the operation.*

"It will be seen that the grooves C C serve to support and guide the staple-legs during their penetration through the papers, and the recess F is so shaped that, as the staple-legs enter thereinto, they will strike the concave or slanting

"The operation is as follows: A staple is placed within the grooves C C, with its crown resting on the anvil A', the points thus being *turned toward the bending recess F.* The papers to be united are now placed *beneath the driver,* and, by a sharp blow of the hand upon the knob G, the driver is forced downward upon the papers. The staple-legs come through the papers into the recess F, where they are bent over *by the slanting ends thereof.*

"It will be seen that the grooves C C serve to support and guide the staple-legs during their penetration through the papers, and the recess F is so shaped that, as the staple-legs enter thereinto, they will strike the concave or slanting

walls of said recess, and thus be bent inward toward each other *sufficiently to insure their being bent down properly when again struck between the faces of the guide B and driver E.* A plate, *a,* may be advantageously employed to overlap the staple-crown, for preventing the latter from *binding* while the legs are being forced through the papers.

walls of said recess, and thus be bent inward toward each other, *as shown in Figs. 2 and 3.* A plate, *a,* may be advantageously employed to overlap the staple-crown, for preventing the latter from *bending* while the legs are being forced through the papers.

" *It will be seen that the staple-support or anvil* A', *with the slotted or recessed hammer, operates to insert a staple through layers of stock to be united, and simultaneously bends over its projecting ends.*

" *In my original specification I described the further separate operation of completely flattening down the ends of the staple thus bent over, by a second blow between the upper and lower jaw of the implement, believing that the same was new; but I have since learned that the same result was obtained by devices described in previous letters-patent of the United States. Should the legs of the staple, when bent over by the same blow which drives the same, as is hereinabove described, be found not to lie sufficiently close to the surface of the*

*paper, the same may be further flattened down by a second blow between flat surfaces in front of the staple-channel and bending recess, respectively provided therefor.*

*"Figs. 1, 2, and 3 show a hand-stamp embodying my invention, in which the driver reciprocates in a fixed head in the manner of a plunger, while Fig. 5 shows the same invention embodied in a hand-stamp, in which the driver is mounted at the end of a vibrating arm pivoted at its rear extremity to the base, which rests upon the table. It will be seen that the devices which constitute my invention are to be found in both these modifications, and that both operate in precisely the same manner, to insert by a blow upon the knob G of the hand-stamp, the staple through layers of stock to be united, and simultaneously bend over the projecting ends in the opposite bending recess provided therefor.*

"Having thus described my invention, what I claim as new, and desire to secure by letters-patent, is —

"1. *The reciprocating driver E, constructed with a flat face recessed, substantially as described, whereby the projecting*

"Having thus described my invention, what I claim as new, and desire to secure by letters-patent, is —

"1. *The combination of the stationary staple-support or anvil A', and the sliding staple-guide B, with the reciprocat-*

ends of staples may be first bent over by entering the recess and then flattened down by pressure from the flat face.

ing slotted or recessed hammer, operating to insert a staple through layers of stock to be united, and simultaneously bend over its projecting ends, substantially as and for the purpose set forth.

"2. The self-adjusting guide-block B, having staple-guiding grooves C C and a flat face, upon which to complete the clinching of the staple, substantially as and for the purpose set forth.

"2. In a device for inserting metallic staples, the combination of the staple-guide B, anvil A', spring D, and reciprocating driver, provided with the knob G, the whole arranged to operate substantially as and for the purpose set forth.

"3. The combination of the stationary staple-support or anvil A with the sliding guide B, grooved to partially embrace and guide the staple-legs, substantially as and for the purpose set forth.

"3. A staple-inserting implement having two opposite jaws arranged with relation to each other, substantially as shown, one of which is provided with a recess, the other with a vertically channelled staple-guide, an anvil, and a spring, so that, when the jaws are separated, after driving a staple, the guide will be open for the reception of the succeeding staple, substantially as described.

"4. The combination of the stationary staple-support or anvil A with the reciprocating slotted or recessed hammer, operating to insert a staple through layers of stock to be united, and simultaneously bend over its projecting ends, substantially as and for the

"4. An implement for inserting metallic staples, consisting of two opposite jaws, one of which is provided with a staple-bending recess, and the other with staple-guiding grooves and an anvil fitted thereto, in combination with a knob to receive the blow of the hand and insert

*purpose set forth."*    a staple by a sudden percussion, substantially as described.

"5. In a staple-inserting machine constructed to operate substantially as described, the staple-guiding block B, having staple-holding grooves CC, forming side extensions of the vertical slot S, substantially as shown and described.

"6. An implement for inserting metallic staples, consisting of two opposite jaws, one of which is provided with a staple-bending recess, and the other with staple-guiding grooves and an anvil fitted therein, the said jaws being arranged to be separated and stand apart, to admit the requisite manipulation for conveniently placing a staple in the open end of the staple-guiding grooves, substantially as set forth.

"7. The combination of the stationary staple-support or anvil A' with the sliding-guide B, grooved to partially embrace and guide the staple-legs, substantially as and for the purpose set forth.

"8. In an implement for inserting metallic staples, a reciprocating driver provided with a knob to receive the blow of the hand, in combination with a grooved staple-guiding block and an anvil attached to

> *a stand of convenient form for use upon a writing-desk, the said stand having an arm arising therefrom, and over and above it a guide for the purpose of guiding the said driver to the said anvil, substantially as and for the purpose set forth."*

The differences which thus appear in the descriptive parts of the specification are these :

In the original, in stating the operation of the machine, it is said that the points of the staple point "upward" when the staple is within the grooves. In the reissue, it is stated that those points are "turned toward the bending recess F."

In the original, it is said that the papers to be united are "placed upon the face of the guide B over the staple-points." In the reissue, it is said that the papers to be united are placed "beneath the driver."

In the original, it is said that "the guide B gives way, and the staple-legs come up through the papers into the recess F, where they are bent over preparatory to the final clinching." In the reissue, it is said that "the staple-legs come through the papers into the recess F, where they are bent over by the slanting ends thereof."

The original then contains the following statement, which is wholly omitted in the reissue : "The hand is now released from the knob of the driver, the latter then rising, and the papers are drawn somewhat forward, until the staple-crown rests upon the face of the guide B, when another blow is imparted to the driver, and the flat portion of its face descends forcibly on the staple-legs, so as to bend the latter close to the paper, thus completing the operation."

The reissue omits the statement of the original, that, as the staple-legs strike the slanting walls of the recess, they will be bent inward toward each other sufficiently to insure their being bent down properly when again struck between the faces of

the guide B and driver E, and substitutes the statement, that, when the staple-legs strike the slanting walls of the recess they will be bent inward toward each other, as shown in Figures 2 and 3.

The following sentence, not in the original, is found in the reissue: "It will be seen that the staple-support or anvil A', with the slotted or recessed hammer, operates to insert a staple through layers of stock to be united, and simultaneously bends over its projecting ends."

The specification of the reissue then states that the separate operation described in the original, of flattening down by a second blow the ends of the staple when bent over, was not new, but that the legs of the staple, if not laid sufficiently close to the surface of the paper, when bent over by the driving blow, may be further flattened down by a second blow between flat surfaces.

Figure 5 of the drawings, though contained in the drawings of the original patent, was not described or referred to in the original specification, but the reissued specification speaks of Figures 1, 2, and 3 as showing a hand-stamp in which the driver reciprocates in a fixed head in the manner of a plunger, while Figure 5 shows a hand-stamp in which the driver is mounted at the end of a vibrating arm, pivoted at its rear extremity to the base which rests upon the table; that the devices which constitute the invention are found in both of these modifications; and that both operate to insert, by a blow upon the knob G of the hand-stamp, a staple through layers of stock to be united, and to simultaneously bend over the projecting ends in the opposite bending recess provided therefor.

On the question of novelty, the alleged prior invention principally relied upon is a patent of the United States, No. 187,189, granted to George L. Ward and Orianna S. Smyth, assignees of James C. Smyth, February 6, 1877, for an "improvement in machines for stitching books with staples."

The Circuit Court, in its opinion, accompanying the record, held that the patented invention was not anticipated by that of Smyth; that claims 1 and 2 of the reissue were substantially the same as claim 4 of the original patent, when the

latter claim was read in the light of the specification; and that the defendant's device infringed claims 1 and 2 of the reissue.

Claim 1 of the reissue is for a combination of (1) the stationary staple-support or anvil; (2) the sliding staple-guide; and (3) the reciprocating slotted or recessed hammer or driver; the conjoined operation of the three being to insert a staple through layers of stock to be united, and to simultaneously bend over its projecting ends. Claim 2 of the reissue is for a combination with the same three elements, of (4) the spring D, and (5) the knob G. Claim 4 of the original patent was for a combination of only two of these elements, namely, (1) the stationary staple-support or anvil and (2) the reciprocating slotted or recessed hammer or driver. It left out the sliding staple-guide, and yet the claim stated that the combination of the two elements, without the staple-guide, would operate to insert the staple and simultaneously bend over its projecting ends. It would, however, wholly fail to so operate without the use of the sliding staple-guide. The use and operation of the sliding staple-guide, its arrangement so as to slide, the use of the spring D to keep it in its normal elevated position, so that it will not drop prematurely, and the use of the knob G, with which to impel the driver, are fully set forth in the original specification, and described as necessary, in combination with the stationary staple-support and the reciprocating slotted or recessed hammer, to insert a staple through layers of stock and simultaneously bend over its projecting ends; and the invention is stated, in the original specification, to consist in a hand-stamp by which metallic staples may be forced through sheets of "paper documents" and secured by clinching the legs on the reverse side. We do not find it necessary, however, to decide whether the reissue is to be considered a proper one, so far as claims 1 and 2, rightly construed, are concerned, on the view that it was an inadvertence, accident, or mistake to have left out of claim 4 of the original the elements which, by the description in the original specification, were made necessary to the performance of the operation specified in that claim. We dispose of the case on the assumption that the reissued patent is valid as respects claims 1 and 2.

What is the proper construction of those claims? In claim 1, the staple-support or anvil is described as being "stationary," and the slotted or recessed hammer or driver as being "reciprocating." In claim 2, the anvil must be regarded as a "stationary" anvil, and the hammer or driver is expressly stated to be "reciprocating." In claim 4 of the original, the staple-support or anvil is said to be "stationary," and the slotted or recessed hammer to be "reciprocating." So in claim 1 of the original, the driver is said to be "reciprocating," and in claim 3 of the original the staple-support or anvil is said to be "stationary." In the description in the original specification, the anvil is described as being "a stationary anvil," and the hammer or driver as being "a reciprocating driver." In the specification of the reissue, the staple-support is described as being "a stationary anvil," and the driver or hammer as being "a reciprocating driver."

The file-wrapper and contents in the matter of the reissue are part of the evidence in the case, and throw light upon what should be the proper construction of claims 1 and 2. The application for the reissue was filed May 10, 1881. In the application as then presented eleven claims were proposed, the first and ninth of which were as follows:

"1. The staple-guide B, driving head A', operating therein, recessed bending block E, spring D, and knob G, combined and operating substantially as and for the purpose set forth."

"9. The combination of the anvil or driving head A' with the reciprocating slotted or recessed hammer, operating to insert a staple through layers of stock to be united, and simultaneously bend over the projecting ends, substantially as and for the purpose set forth."

On the 12th of May, 1881, the applicant cancelled claims 1 and 9, and converted claim 9 into a new claim 1, and claim 1 into a new claim 2, as follows:

"1. The combination of the stationary staple-support or anvil A' with the reciprocating slotted or recessed hammer, operating to insert a staple through layers of stock to be united, and simultaneously bend over its projecting ends, substantially as and for the purpose set forth.

" 2. In a device for inserting metallic staples, the combination of the staple-guide B, anvil A', operating therein, spring D, recess F, and knob G, the whole arranged to operate substantially as and for the purpose described."

On the 14th of May, 1881, the examiner notified the applicant as follows: "Upon further consideration of this matter, in connection with amended specification, applicant is advised that the 1st clause of claim does not present an operative combination of mechanical devices for the purpose stated. It is obvious that without a staple-holding device the parts enumerated would be inoperative, in view of which a staple-holding device should be included. In reference to the 2d and 3d clauses of claim, the statement that the anvil operates in the guide-block is unwarranted, inasmuch as the anvil is stationary and the guide-block slides up and down upon the anvil. With proper correction as to this point, the 2d and 3d clauses of claim may be allowed."

On the 31st of May, 1881, the applicant adopted the suggestions of the examiner and amended claim 1 by inserting after the words "stationary staple-support or anvil A'," the words " and the sliding staple-guide B," and amended claim 2 by cancelling the words " operating therein," so that claims 1 and 2 then read as follows:

" 1. The combination of the stationary staple-support or anvil A' and the sliding staple-guide B with the reciprocating slotted or recessed hammer, operating to insert a staple through layers of stock to be united, and simultaneously bend over its projecting ends, substantially as and for the purpose set forth.

" 2. In a device for inserting metallic staples, the combination of the staple-guide B, anvil A', spring D, recess F, and knob G, the whole arranged to operate substantially as and for the purpose described."

On the 4th of June, 1881, the examiner notified the applicant as follows: "Upon further consideration of this matter, in connection with the last amendment, it is obvious that the 'recess F' should not form an element of the mechanical combination, as such recess is a provision of the 'hammer' referred to in the first clause of claim, and such recess is not an operative element independent of such hammer."

On the 14th of June, 1881, the applicant made further amendments, leaving claim 1 as last recited, and as it is found in the reissued patent, and amending claim 2, as last recited, by striking out the words "recess F," so that it read as follows:

"2. In a device for inserting metallic staples, the combination of the staple-guide B, anvil A', spring D, and knob G, the whole arranged to operate substantially as and for the purpose described."

On the 15th of June, 1881, the examiner notified the applicant as follows: "Upon further consideration of this matter, with a view to final action, the 2d clause of claim is found defective, in the absence of any mechanical combination between the 'knob G' and the other elements included in the combination. To obviate this objection a 'reciprocating driver' should be added to the combination."

On the 18th of June, 1881, the applicant amended claim 2 by substituting for the words "and knob G" the words "and reciprocating driver provided with the knob G," so that the claim, as thus amended, read as follows, the same as claim 2 in the reissued patent:

"2. In a device for inserting metallic staples, the combination of the staple-guide B, anvil A', spring D, and reciprocating driver provided with the knob G, the whole arranged to operate substantially as and for the purpose set forth."

From these proceedings in the Patent Office, in regard to the allowance of claims 1 and 2 of the reissued patent, it is apparent that the applicant carefully limited himself, in those claims, to a stationary staple-support or anvil and a reciprocating slotted or recessed hammer or driver. This result must also follow in view of the devices existing in the various prior patents introduced in evidence, showing the state of the art. The various elements entering into the combinations of claims 1 and 2 of the reissue were old, considered singly. The recessed clinching base was old; the driver in the staple case was old; the combination of those two devices in a power machine was old. The J. C. Smyth machine was a hand-lever machine, and contained in combination all the elements of the Heyl device,

though differently arranged. In both the Smyth and the Heyl devices there are means of forcing out a staple from a case by a contained plunger, and bending the legs against a concave recess. In view of this Smyth machine, the plaintiffs' expert stated that the novelty of the Heyl devices consisted particularly " in the automatic adjustment to various thicknesses of paper, by means of which, without any added parts, the jaws are adapted to grip and hold all thicknesses of paper while being stapled and clinched ; in their capacity for being opened to allow the eye to see the staple while being inserted by hand at the open end of the staple case, whereby a length of staple may be adapted or selected to suit the material; in the retracting spring to keep the staple case constantly open for a new staple ; in a hand knob for driving down the plunger ; and in the general construction and adaptation of all the parts to be used as a light, portable desk tool, low in price, simple in construction and operation, and of universal use."

In prior devices, the clinching part was the base and the inserting device was above it. This arrangement did not permit of the proper support of the staple in the tube. Heyl reversed the position of the parts, and placed the inserting device on the base, so that the staple could be inserted by hand into the open mouth of the tube, and be supported, until it should be driven, by the tube and its contained driver, this reversal of the parts necessitating the use of a spring underneath, to support the tube and keep it above the end of the driving blade, or of a spring at the side to press against the guide and keep it in place by friction. Claims 1 and 2 of the reissued patent must, therefore, be limited to the specific combinations and arrangements of parts described and shown in the specification and drawings, and enumerated in those claims. The staple-support or anvil must be stationary, and the slotted or recessed hammer or driver must be reciprocating.

In the defendant's device, called the " Victor tool," the anvil or staple blade is movable, and the recessed clinching base is fixed or stationary. It is a device constructed under and in accordance with letters-patent No. 218,227, granted to William J. Brown, Jr., August 5, 1879, and a second patent,

No. 260,365, granted to the same person July 4, 1882. The drawings of No 260,365 are as follows:

*Fig.3.*

*Fig.2.*

*Fig.1.*

*Fig.4.*

An expert for the plaintiffs testifies, that he regards the lower part of the defendant's device, which is fixed or stationary and contains the clinching cavity, and resists the driving and clinching blow of the hand from the opposite part of the tool, as the equivalent for the "reciprocating driver provided with the knob G," mentioned in claim 2 of the reissue. As the defendant's tool is constructed with the stationary recessed clinching base made to rest upon a table, and to receive the impact from above of the detached driving tool, it is a misnomer to say that such stationary base is the mechanical equivalent of the reciprocating driver E of the Heyl patent. The patentee having imposed words of limitation upon himself in his claims, especially when so required by the Patent Office in taking out his reissue, is bound by such limitations, in subsequent suits on the reissued patent. Such have been the uniform decisions of this court, in like cases. *Leggett* v. *Avery,* 101 U. S. 256; *Goodyear Dental Vulcanite Co.* v.

*Davis*, 102 U. S. 222, 228; *Fay* v. *Cordesman*, 109 U. S. 408; *Mahn* v. *Harwood*, 112 U. S. 354, 359; *Cartridge Co.* v. *Cartridge Co.*, 112 U. S. 624, 644; *Sargent* v. *Hall Safe & Lock Co.*, 114 U. S. 63; *Shepard* v. *Carrigan*, 116 U. S. 593; *White* v. *Dunbar*, 119 U. S. 47; *Sutter* v. *Robinson*, 119 U. S. 530; *Bragg* v. *Fitch*, 121 U. S. 478; *Snow* v. *Lake Shore Railway Co.*, 121 U. S. 617.

Assuming, therefore, that claims 1 and 2 of the reissued patent are valid, they are to be construed as covering only the precise combinations enumerated in them and described in the specification and shown in the drawings; and they do not cover the defendant's device, which has a stationary recessed clincher and a movable detached staple-inserting tool, because claims 1 and 2 of the reissued patent expressly call for a reciprocating clincher and a stationary staple-supporting anvil. Those elements, in those forms, in claims 1 and 2, were made necessary by the requirements of the Patent Office, before it would grant the reissue, and the applicant, having voluntarily made the limitations, is bound by them.

Although, in the proofs, the plaintiffs undertook to show that three other claims of the reissued patent, in addition to claims 1 and 2, were infringed by the "Victor tool," the Circuit Court, in its interlocutory decree, states that it considered only claims 1 and 2; and, as the decree holds those claims alone to be valid and to have been infringed, and the master's report and the final decree apply only to those claims, and the counsel for the plaintiffs does not contend, in his brief, that any other claim is infringed, we necessarily have confined our consideration of the case to those two claims, leaving all questions as to every other claim of the reissued patent entirely open for consideration in a case which may involve them.

*The decree of the Circuit Court is reversed, and the case is remanded to that court with a direction to dismiss the bill of complaint.*