H. GOODMAN & SONS, Inc., et al. v. RUBIN et al.

District Court, S. D. New York.
July 27, 1933.

George H. Mitchell, of New York City, for plaintiffs.

David P. Siegel, of New York City (H. C. Bierman and M. B. Seasonwein, both of New York City, of counsel), for defendants.

KNOX, District Judge.

H. Goodman & Sons, Inc., claiming to be an exclusive licensee of the patent in suit, brings this suit against Jacob Rubin and Noah Rubin, copartners, trading under the firm name and style of Rubin Bros., for an alleged

infringement of United States letters patent No. 1,326,153, of December 23, 1919, owned by Fleming & Keevers Company, Inc., a Massachusetts corporation. The latter corporation, having neglected or refused voluntarily to join in the action and not being amenable to the service of process, has been joined as a party plaintiff herein.

The claims of the patent are as follows:

"1. A buckle supporting member having two spaced and connected members between which the vamp of a slipper may be received to detachably connect the member thereto.

"2. A supporting means for buckles and the like, comprising, a part for attachment to the buckle and a second part in the nature of a clip having two spaced jaws to respectively slip over and under the vamp of a slipper to detachably connect said means thereto.

"3. A supporting means for buckles and the like, comprising, a part for attachment to the buckle and a second part in the nature of a clip having two spaced spring jaws to respectively slip over and under the vamp of a slipper to grip the same and detachably connect said means thereto.

"4. A support for buckles and the like, comprising a member bent backwardly upon itself to provide two spaced parts to engage the outer and inner surfaces of the vamp of a slipper or the like, the rear edge of said member and the inner part being curved to substantially fit the instep of the foot, and a part provided on said member to support the buckle.

"5. In combination with a shoe or the like, a buckle supporting member having a part for attachment to the buckle and another part for detachable connection to the shoe, said last-named part comprising two relatively closely spaced spring jaws between which the vamp of the shoe is received and gripped to detachably connect said support thereto."

In the case of Fleming & Keevers Co., Inc. v. Goodman & Sons, 4 .F. Supp. 444, decided on July 19, 1928, Judge Goddard held the foregoing claims to be valid and infringed. As a result of this decision, H. Goodman & Sons paid Fleming & Keevers $10,000 in full settlement of its claim, and entered into a license agreement wherein, in consideration of the payment of certain stipulated royalties, Fleming & Keevers Company, Inc., granted to the present plaintiff "the exclusive right, license, and privilege under said Letters Patent No. 1,326,153, to make, use and sell buckle-holders *of the same,* or *substantially the same, form, type, construction or kind, as the buckle-holder hereto attached* and identified as 'Specimen No. 1', and which buckle-holder is further identified by the name or mark 'Triumph' stamped thereon, and which 'Triumph' buckle-holder formed the basis of the charge of infringement by Fleming & Keevers Co. in the patent suit aforesaid." (Italics mine.)

The agreement further provided: "Fleming & Keevers Co. agrees, at its own cost and expense, to institute and prosecute *such suits* or actions against infringers of said Letters Patent No. 1,326,153 *as it may or shall be advised by its counsel, learned in the law,* should be instituted or prosecuted, but nothing herein contained shall prevent or estop Fleming & Keevers Co. settling, compromising or giving acquittance for, any and all claims, suits or actions, brought or made by it, and relating to or growing out of the infringement of said Letters Patent No. 1,326,153 aforesaid, with the exception that Fleming & Keevers Co. agrees to bring suit against and to diligently prosecute any infringer making, using or selling, or causing to be made, used or sold any buckle-holder the same or substantially the same, as 'Specimen No. 1' attached hereto, and not to settle, compromise or give acquittance for any such infringement involving buckle-holders the same or substantially the same as said 'Specimen No. 1', without the consent, in writing, of H. Goodman & Sons first had and obtained." (Italics mine.)

On August 17, 1929, the same day that this agreement was made, Fleming & Keevers Company, Inc., wrote a letter to H. Goodman & Sons, which was accepted by that company, in which it was stated:

"At the conference had yesterday * * * between your Mr. Abraham Goodman and our Mr. Matthew J. Keevers, your representative indicated that you might find it desirable to manufacture and market a buckle-holder *of a different type than your 'Triumph' holder,* to wit, a small buckle-holder of what might be called the 'paper clip' type, comprising a U shaped clip formed of two spaced continuous-edged plate like jaws provided with inwardly projecting opposing prongs, and which jaws are adapted to clamp the vamp of a shoe, so that the buckle will be detachably supported at the front of the shoe.

"We therefore hereby give and grant you the exclusive right and license to manufacture, use and sell *this particular type of buckle-holder,* and to hold you free and harmless from and against suit under our Flem-

ing patent No. 1,326,153, by reason of your manufacture, use and sale of *such particular type of buckle-holder*, in consideration of which license you agree to pay us the sum of Ten Cents (10¢) for each gross * * * of such buckle-holders sold, distributed, or marketed by you. * * *." (Italics mine.)

█ The matter which first presents itself for consideration is as to the situation created by the refusal and neglect of the patent owner to participate affirmatively in the present action. In this connection, the licensee relies upon the decision of the Supreme Court in Independent Wireless Co. v. Radio Corporation of America, 269 U. S. 459, 46 S. Ct. 166, 70 L. Ed. 357. Proof taken at the trial shows plainly that Fleming & Keevers Company, Inc., was acquainted with the alleged infringement and was requested to take action thereon, and that it either refused or neglected so to do. From this standpoint, therefore, H. Goodman & Sons, Inc., may join the patent owner as a party plaintiff, provided that H. Goodman & Sons, Inc., is entitled to assert the rights here claimed against defendants. This phase of the matter involves, not only the present license agreements, but their relationship to the law as declared in the above-mentioned decision, as well.

█ The agreement in the Independent Wireless Case gave the plaintiff the exclusive right to use and sell in the United States, for radio purposes, apparatus for transmission of messages, and especially for use between ship and shore for pay. The defendant had the right to use the same apparatus only in the amateur and experimental field. The bill charged that defendant was using the apparatus or part of it in the commercial radio field between ship and shore for pay and thus was violating the rights of plaintiff. Apparently, each licensee was authorized, within certain fields, to enjoy the full scope of the patent; in other words, use or vend the invention. Such would seem not to be the fact in the case at bar. All that was granted to H. Goodman & Sons, Inc., was the exclusive right to make, use, and sell particular forms of devices that are claimed to be within the scope of the invention. Conceivably, there may be many forms of clips within the length and breadth of the invention, and each of them may be the subject of an exclusive license granted, or to be granted, by the patent owner. This is made clear by the two forms of clips which H. Goodman can manufacture, use, and sell, and by the "exclusive license" that was given by Fleming & Keevers Com-

pany, Inc., to Deauville Import Corporation under which the latter can manufacture and sell a particular type of patented clip.

H. Goodman & Sons, Inc., is not possessed of an exclusive right to make, use, or sell devices under the patent which is wide enough to give it the standing of an assignee under the patent or a part of it. This is necessary if it is to be allowed compulsorily to join the patent owner as a plaintiff in an infringement suit. A license, however it may be worded, which does not entitle the licensee to the full scope of some right which is specified and secured by the patent, cannot properly be said to be an exclusive license. Otherwise, it would be impossible to ascertain the extent to which the exclusive licensee of a particular form of the invention might be damaged by another and different form closely approximating a still different embodiment of the invention, also covered by a so-called "exclusive license" of the patent owner. Indeed, the very form of device so alleged to infringe might itself be the subject-matter of such a license. Or, if several such licenses were outstanding, each of them might be infringed by the unauthorized manufacture and sale of a form of the invention differing from each of the others. An infringer might well damage several licensees, and do so in differing amounts. Unless each such licensee and the owner of the patent were brought into a suit against such an infringer, he could not, as is his right, respond in one action to all claims of infringement, and thus either defeat all claims in one action, or, by satisfying one adverse decree, bar all subsequent actions. From the foregoing it seems plain that the reasons for allowing an exclusive licensee such as was before the court in the Independent Wireless Co. Case, to join the licensor in an infringement suit, do not exist with respect to the licensee in the present suit.

Considerations such as the foregoing may be responsible for the form of the covenants of Fleming & Keevers Company, Inc., in the license agreement, and, also, they may account for the failure of that concern to come into this suit. The limitation of the agreements, particularly the engagement of the licensor "to hold (the licensee) free and harmless from and against suit under our Fleming patent, No. 1,326,153," indicates that H. Goodman & Sons, Inc., acquired "the right not to be sued." See Keystone Type Foundry v. Fastpress Company (C. C. A.) 272 F. 242, 243; Heaton-Peninsular Button-Fastener Company v. Eureka Specialty Company

(C. C. A.) 77 F. 288, 290, 35 L. R. A. 728. Then, too, it cannot be overlooked that, if the licensor and licensee themselves regarded it as necessary to differentiate between the buckles which H. Goodman & Sons, Inc., were to be permitted to make, use, and sell, they did not view the small clip covered by the second agreement as being "substantially the same" as the one which Judge Goddard held to be an infringement of the Fleming patent.

Now, defendant's device is of the general type of H. Goodman & Sons, Inc., small clip. It is not within the scope of the license relating to the "Triumph" holder. Such rights, if any, that here may be claimed against defendants must be found within the agreement having to do with the paper clip type of buckle holder. Reading it, and bearing in mind the discussion already had, I am of opinion that H. Goodman & Sons, Inc., by reason of a defect of parties, cannot maintain this suit.

■■ But, proceeding to the merits of the cause of action which is here asserted, the following may be added:

The patent in suit contemplates a device with two distinct parts: One to which the buckle can be attached, and one having two jaws to grip the vamp of the shoe. This is apparent from an inspection of the drawings, and a perusal of the specifications and the claims. The specifications state: "The buckle support comprises essentially a part 10 for attachment to the bow, buckle, or other ornament, and a clip portion 11 for attachment to the slipper or pump. The clip portion 11 includes two closely spaced jaws 12 and 13 beneath which the vamp of the slipper or pump is received."

Similarly, claim 2 specifies: "A part for attachment to the buckle and a second part in the nature of a clip having two spaced jaws. * * *" Claim 3: "A part for attachment to the buckle and a second part in the nature of a clip. * * *" Claim 4: "A member bent backwardly upon itself to provide two spaced parts to engage the outer and inner surfaces of the vamp of a slipper * * * and a part provided on said member to support the buckle. * * *" Claim 5: "A part for attachment to the buckle and another part for detachable connection to the shoe. * * *"

The language of claim 1 is not so clear, reading as follows: "A buckle supporting member having two spaced and connected members between which the vamp of a slipper may be received to detachably connect the member thereto."

Although it is possible to construe these words by themselves to mean that there need not be two distinct parts to the device, it is my opinion that, in the light of the specification, the claim must be interpreted as contemplating two such parts. It is well settled that claims may be narrowed by limitations in the description. See McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800; Crawford v. Heysinger, 123 U. S. 589, 607, 8 S. Ct. 399, 31 L. Ed. 269; Sargent v. Lock Company, 114 U. S. 63, 86, 5 S. Ct. 1021, 29 L. Ed. 67; Walker on Patents (6th Ed.) § 227. Furthermore, a broad construction of the claim would appear to make it invalid in view of the prior art. See Frees patent, No. 269,658, for neckties; Bleakney patent, No. 878,497, for paper clip (illustrated by Defendant's Exhibit K); and Washburne patent, No. 1,242,620, for paper clips (illustrated by Defendant's Exhibit M). For both of these reasons, a proper interpretation of claim 1 also requires that the part for attachment to the buckle must be distinct from the clip part which grips the vamp of the shoe. Neither the small paper clip type of holder of H. Goodman & Sons, Inc., nor the defendant's alleged infringing device, contain a part for attachment to the buckle as an element separate from the clip portion of the holder. In a crowded field such as is here presented, the omission of this element places the Goodman small clip beyond the scope of the patent and precludes a charge of infringement against the defendants. Cimiotti Unhairing Company v. American, etc., Co., 198 U. S. 399, 410, 25 S. Ct. 697, 49 L. Ed. 1100; Walkup v. Interborough R. T. Co., 22 F.(2d) 266 (C. C. A. 2d). See Otis Elevator Company v. Atlantic Elevator Company (C. C. A.) 47 F.(2d) 545, at pages 547–548.

■■ The license agreement between Fleming & Keevers Company and H. Goodman & Sons, therefore, which purported to grant a license with respect to the paper clip type of buckle holder, was ineffective to confer any rights upon H. Goodman & Sons as against third parties. A licensor can convey no greater title or interest than he possesses. Mitchell v. Hawley, 16 Wall. 544, 21 L. Ed. 322; New York Phonograph Company v. National Phonograph Company (C. C.) 163 F. 534; Keene Machine Company v. Barratt (C. C. A.) 100 F. 590. For this reason, therefore, as well as because the agreement did not grant them an exclusive license, H. Goodman & Sons, Inc., cannot join Fleming & Keevers Company, as coplaintiffs, without their consent; and they cannot, of course, maintain an action for infringement in their own name.

Independent Wireless Company v. Radio Corporation, supra; Paper Bag Cases, 105 U. S. 766, 26 L. Ed. 959; Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504.

The complaint is dismissed, with costs.