# United States Court of Appeals for the Federal Circuit

2005-1398

NOURI E. HAKIM,

Plaintiff-Appellant,

v.

CANNON AVENT GROUP, PLC, CANNON RUBBER LIMITED
and AVENT AMERICA, INC.,

Defendants-Appellees.

Morris E. Cohen, of Brooklyn, New York, argued for plaintiff-appellant.  With him on the brief was Eric W. Buether, Goodwin Gruber, LLP, of Dallas, Texas .  Of counsel was Brian M. Koide, Crowell & Moring, LLP, of Washington DC.

Joseph A. Calvaruso, Chadbourne & Parke LLP, of New York, New York, argued for defendants-appellees.  With him on the brief were Kenneth S. Weitzman and Richard Martinelli.

Appealed from:  United States District Court for the Western District of Louisiana

Judge Robert G. James

# United States Court of Appeals for the Federal Circuit

2005-1398

NOURI E. HAKIM,

Plaintiff-Appellant,

v.

CANNON AVENT GROUP, PLC, CANNON RUBBER LIMITED
and AVENT AMERICA, INC.,

Defendants-Appellees.

_____

DECIDED: February 23, 2007

_____

Before MICHEL, <u>Chief Judge</u>, NEWMAN and RADER, <u>Circuit Judges</u>.

NEWMAN, <u>Circuit Judge</u>.

Mr. Nouri E. Hakim sued Cannon Avent Group, PLC, Cannon Rubber Limited, and Avent America, Inc. (together "Avent") in the United States District Court for the Western District of Louisiana, asserting infringement of Hakim's United States Patents No. 6,321,931 (the '931 patent) and No. 6,357,620 (the '620 patent), by Avent's leak-resistant

drinking cups. The district court granted Avent's motions for summary judgment that the '931 patent is not infringed and the '620 patent is invalid.[1] We affirm these judgments.

THE '931 PATENT

The Hakim inventions are for drinking cups that prevent the spilling of liquid if the cup is tipped over. Hakim's patented cups have a valve through which fluid can pass when suction is applied by a person by way of a drinking spout, whereby the valve closes to seal the cup when a person is not drinking. The specification of the '931 patent describes the preferred embodiment as having a dual sealing mechanism that provides an "extremely secure seal" against spillage:

> In accordance with the invention, an improved cup construction and valve assembly is provided which provides an extremely secure seal against accidental liquid flow from the cup spout. Further to the invention, a user places his or her mouth against the spout of the cup assembly to suck liquid out of the cup when desired. The act of sucking at the spout of the cup creates negative pressure or a partial vacuum against a valve in the cup spout, causing the valve to invert, or turn inside out, either partially or totally, thereby unblocking an opening such as an orifice or slit in the valve. Once the opening is unblocked, liquid can flow freely through the valve and spout.
>
> In contrast, when not in use, the valve sits in a resting, closed position, with the valve pressed against the center seal-off, thereby sealing off the opening or slit in the valve assembly. Thus, in its relaxed state, with no negative pressure applied, the valve sits in a closed position with the fluid opening sealed by the center seal-off. Moreover, in accordance with the dual valve nature of the device in the preferred embodiment, an adjacent valve similarly seals when no negative pressure is applied, thereby blocking off the air vents in the cover of the cup, and further preventing the possibility of fluid flow. Consequently, the closed position provides an extremely secure seal against fluid leakage, such that inadvertent spills or even deliberate attempts to force liquid outside of the cup, such as by turning the cup upside down, or shaking the cup, are ineffective.

---

1       Hakim v. Cannon Avent Group, PLC, No. 3-02-1371, 2005 WL 1793760 (W.D. LA May 3, 2005) (the '931 patent) ("Hakim I"); Hakim v. Cannon Avent Group, PLC, No. 3-02-1371, 2005 WL 1793765  (W.D. LA May 3, 2005) (the '620 patent) ("Hakim II").

'931 Patent, col. 1, line 51 to col. 2, line 10.

During patent prosecution Hakim described his distinctions from the cited references as follows:

> Thus two separate mechanisms are both used to close off the passage of liquid through the valve when not in use. The first mechanism involves an inverting, <u>flexible valve material which has a slit</u> therein and responds to suction. The second mechanism involves the use of a blocking element, which is impenetrable to the passage of liquid. The slit sits against the blocking element, sealing or blocking off the slit, to yet further prevent the passage of liquid through the valve.
>
> . . . . By providing <u>both the elastomeric member with a slit and a blocking element</u>, a sealing mechanism is provided which reduces spillage beyond that of either mechanism alone. None of the references cited in the Office Action [Robbins III, Bachman, and Belcastro] teach or suggest such <u>a no-spill mechanism having a slit sitting against a blocking element such as is recited in all of the pending claims</u>.

'931 Application Response, Oct. 2, 2000 (emphases added).  Thus during prosecution the presence of the slit in the flexible valve material was emphasized as distinguishing all of the claims from the cited references.

Avent's accused drinking cup has a valve with a flexible diaphragm having a central opening, but the opening is not a slit that opens and closes, but simply a hole in the diaphragm.  The diaphragm rests against a plastic mount that has a conical head that seals the hole.  Upon suction by a person seeking to drink, the diaphragm is lifted off the conical head, exposing the hole and permitting fluid to flow from the cup to the drinking spout.

The district court held on summary judgment that Avent's device did not infringe the '931 claims, based on the claim construction that limited the '931 claims to a sealing mechanism that includes a flexible valve material or diaphragm having a slit. <u>Hakim I</u> at *1 ("For the reasons contained in the Report and Recommendation of the Magistrate Judge

previously filed herein, and after a de novo review of the entire record and the written objections filed herein, and concurring with the Magistrate Judge's findings under the applicable law"; summary judgment was granted.)  Mr. Hakim argues that the claim construction is excessively constricted and that all of the '931 claims do not require a slit that opens and closes with pressure, for claims 1 and 2 use the word "opening," not "slit," for the aperture in the diaphragm.  Claim 1 is as follows:

> 1.  An apparatus for use in a no-spill drinking cup, said apparatus comprising:
> a valve holder, such valve holder comprising at least one valve and a blocking element, said valve comprising a flexible material, said blocking element comprising an area of material which is impenetrable to the flow of liquid, said valve further comprising <u>an opening through said flexible material</u>, said valve having a resting position wherein said flexible material sits with said opening against said blocking element such that said valve is closed to the passage of liquid through said valve, said valve moving into an open position for the passage of liquid through said valve upon the application of negative air pressure to the top of said valve, said open position being a position wherein said flexible member comprising said opening lifts off of said blocking element.

(Emphasis added.)  The word "opening" was placed in claims 1 and 2 when Hakim filed a continuation application after receiving a notice of allowance for claims wherein the word "slit" appeared instead of "opening."  The filing of the continuation was accompanied by an attorney letter stating that Hakim was broadening claims 1 and 2, and an amendment changing "slit" to "opening" in claims 1 and 2.  The continuation claims were allowed without any comment or rejection by the examiner.  However, in construing the claims of the continuation patent, the district court held Hakim to his arguments in the parent application that the invention includes the presence of a slit in the flexible material.  The court stated: "Because Hakim did not retract any of his arguments distinguishing the prior

art, he is held to the restrictive claim construction he argued during prosecution of the patent."  Hakim I at *5 (adopted Magistrate's Report).

Hakim argues that the district court improperly relied on the argument in the abandoned parent application.  Hakim states that by re-filing the application with broader claims, he avoided any unnecessary restriction that may have crept into the prior prosecution.  He states that he informed the examiner that the new claims were broader than those previously allowed, and that when the examiner allowed the new claims without rejection, there is a presumption that the examiner had assured himself of the patentability of the new claims.  See United States v. Chemical Foundation, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.")  Hakim states that he did what was appropriate when he flagged this change to assist the examiner, and that the claims as granted should not be unnecessarily narrowed by the court.

Avent states that the totality of the prosecution history nonetheless limits Hakim to the embodiment with the slit, for the magistrate judge found: "The prosecution history makes perfectly clear that Hakim specifically distinguished his invention from the prior art by limiting it to an apparatus with both (1) a slit which closes when suction is not applied, and (2) a second closure consisting of a blocking element which the slit rests against."  Hakim I at *5 (adopted Magistrate's Report).  Avent states that this was and is the distinction from the prior art, and that the claims are properly limited to this feature whether they use the word "slit" or the word "opening."  Avent stresses that when Hakim wrote to the examiner that he was broadening the claims, he did not specifically point out that he no

longer intended to be limited to the specific mechanism that he had previously argued was the distinguishing feature of his invention.

Hakim points out that a patent applicant is not precluded from filing a continuation application with broader claims. It is recognized that an applicant can broaden as well as restrict his claims during the procedures of patent examination, and that continuing applications may present broader claims than were allowed in the parent. Cf. Symbol Technologies, Inc. v. Lemelson Medical, Education & Research Found., 422 F.3d 1378, 1385 (Fed. Cir. 2005) ("Commonly, and justifiably, one might refile an application to add subject matter in order to attempt to support broader claims as the development of an invention progresses, although entitlement to an earlier filing date for any claimed subject matter may of course be necessary to avoid a statutory bar created by intervening events outlined in 35 U.S.C. §§ 102 and 103.").

Hakim had the right to refile the application and attempt to broaden the claims. See id. at 1385 ("One may also refile an application even in the absence of any of these reasons [refiling an application in response to a requirement for restriction; refiling in order to present evidence that may not have previously existed; or refiling to support broader claims as the development of an invention progresses], provided that such refiling is not unduly successive or repetitive.") However, an applicant cannot recapture claim scope that was surrendered or disclaimed. The district court did not err in holding that the examiner's action in allowing the continuation claims without further prosecution was based on the prosecution argument in the parent. See Omega Engineering, Inc. v Raytek Corp., 334 F.3d 1314, 1324 (Fed. Cir. 2003) ("The doctrine of prosecution disclaimer is well established in Supreme Court precedent, precluding patentees from recapturing through

claim interpretation specific meanings disclaimed during prosecution.") (citing Schriber-Schroth Co. v. Cleveland Trust Co., 311 U.S. 211, 220-21 (1940), Crawford v. Heysinger, 123 U.S. 589, 602-04 (1887), and Goodyear Dental Vulcanite Co. v. Davis, 102 U.S. 222, 227 (1880)). Although a disclaimer made during prosecution can be rescinded, permitting recapture of the disclaimed scope, the prosecution history must be sufficiently clear to inform the examiner that the previous disclaimer, and the prior art that it was made to avoid, may need to be re-visited. See Springs Window Fashions LP v. Novo Indus., L.P., 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent. A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement.").

The district court correctly ruled that the word "opening" is not correctly construed to eliminate the sealing mechanism provided by the slitted diaphragm. On this construction, the summary judgment of noninfringement of the '931 patent was correct, and is affirmed.

THE '620 PATENT

The '620 patent also describes a valve containing a diaphragm with an opening, but the opening surrounds a conical post protruding from the surface of the blocking element; when suction is applied to the spout of the cup, the diaphragm is lifted off of the blocking element, permitting fluid to flow through the opening. Hakim describes this invention as follows:

> In the preferred embodiment, the application of negative pressure to the top of the valve causes an opening in a portion of the valve to move up off of the

base of a protruding member extending through that opening. Once the opening is unblocked, liquid can flow freely through the valve and spout.

In contrast, when not in use, the valve sits in a resting, closed position, with the opening pressed against the center seal-off, thereby sealing off the opening, slit or orifice in the valve assembly. Thus, in its relaxed state, with no negative pressure applied, the valve sits in a closed position with the fluid opening sealed by the center seal-off. In the preferred embodiment, the protruding member extends through the opening in a male to female relationship such that the orifice sits tightly on the protruding member against the protruding member's bottom portion and the center seal-off or sealing member's base.

'620 Patent, col. 1, line 51 to col. 2, line 9.

The district court granted summary judgment that the claims of the '620 patent are invalid based on anticipation by Italian Patent No. 594286 (the IT '286 patent). The IT '286 patent was not before the United States examiner, whereupon the district court analyzed the reference to determine its relevance and effect.

## A

Hakim argues that the district court erred in invalidating the '620 patent without first construing the claims, citing Amazon.com, Inc. v. BarnesandNoble.com, Inc., 239 F.3d 1343 (Fed. Cir. 2001) for the proposition that an invalidity analysis begins with the construction of the claims.

Claim construction is directed to claims or claim terms whose meaning is disputed as applied to the patentee's invention in the context of the accused device. When there is no dispute as to the meaning of a term that could affect the disputed issues of the litigation, "construction" may not be necessary. We are not told what alternative meanings are sought for terms that might affect validity of the claim, or how claim "construction" would

affect the issue of anticipation by the Italian patent. Hakim's methodological challenge is without substance.

**B**

"Anticipation" means that the claimed invention was previously known, and that all of the elements and limitations of the claim are described in a single prior art reference. <u>See Akzo N.V. v. U.S. Int'l Trade Comm'n</u>, 808 F.2d 1471, 1479 (Fed. Cir. 1986) ("Under 35 U.S.C. § 102, anticipation requires that each and every element of the claimed invention be disclosed in a prior art reference.") The magistrate judge found that the drinking cup described in the IT '286 reference and the drinking cup in the '620 patent "are substantially identical in all material respects," explaining:

> Both inventions have a flexible valve member or diaphragm, a base and a protruding member or post, called a peduncle in the IT '286 patent. The post extends through a hole in the valve member and, when at rest in its closed position, the valve member sits tightly around the lower portion of the post in both inventions. When a child sucks on the spout, the valve member moves up the post which allows liquid to flow through the hole in the valve member. Both the '620 and the '286 patented apparatuses operate in this manner.

<u>Hakim II</u>, at *4.

Hakim argues that the district court erred in deciding the factual issue of anticipation adversely on summary judgment; specifically, the question of whether the IT '286 reference describes a "closed position." Hakim points out that each claim of his '620 patent requires a closed position in which the valve blocks the passage of liquid, and that the IT '286 reference describes a valve that "produces hermetic sealing," <u>i.e.</u> that blocks the passage of air. Hakim argues that a valve can be tight enough to block the passage of air but not strong enough to block the passage of liquid, and that it cannot be assumed that when the IT '286 valve is closed it blocks the passage of liquid.

2005-1398                                    9

The district court rejected this argument, pointing to the IT '286 statement that its purpose is to prevent liquid from flowing when suction is not applied, that is, to block the passage of liquid in the closed position. We discern no error in the district court's analysis of the description of the device shown in the IT '286 or the operation of the valve structure. We agree with the district court that no reasonable jury could find other than that all of the limitations of the '620 claims are present in the IT '286 device, thereby anticipating the '620 invention.

## C

Mr. Hakim also argues that the district court erred in failing to analyze anticipation on a claim-by-claim basis. In particular, Hakim argues that the court ignored the limitation of claim 12 that the flexible valve "begins to invert upon the application of negative pressure." It is correct that each claim must be considered separately, and that the limitations in subordinate claims are relevant to determination of anticipation of those claims by a single reference. However, the district court did discuss the aspect of when the valve begins to invert:

> Finally, Hakim argues that unlike the IT '286 device his device requires that the flexible member "invert" or "begin to invert" and he embarks on semantical gymnastics to create a distinction in the two devices. This is not, as they say, rocket science; both of these extremely simple devices are made so that, when a child sucks on the spout, the flexible member flexes up on the post, breaking the seal, and allowing the flow of liquid. It matters not whether this movement is called inverting, "beginning to invert", flexing, sliding, moving, lifting or any other term denoting its movement. Both devices allow the liquid to flow when suction moves the flexible diaphragm from its "sealed" position on the post.

Hakim II at *5. Hakim does not state that this analysis is incorrect; he just asserts that this limitation was not separately addressed in the opinion. However, the "begins to invert"

2005-1398                                    10

limitation of claim 12 was indeed discussed. Reversible error has not been shown on this ground.

We affirm the district court's conclusion that the '620 device is anticipated by the device in the IT '286 patent, and that the claims were correctly invalidated.

### *Hakim's Expert Declaration*

Hakim argues that the district court erred in striking his declaration offered as an expert, and that his testimony provided evidence of the validity and correct interpretation of his patents. The court sustained the exclusion as follows:

> A magistrate judge's non-dispositive order is reviewable under the clearly erroneous and contrary to law standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); Castillo v. Frank, 70 F.3d 382, 385-86 (5th Cir. 1995).
>
> In his Memorandum Order granting the Motion to Strike the Hakim Declaration, Magistrate Judge Kirk concluded that Hakim failed to provide a timely expert report or to submit himself for deposition, that expert testimony is not needed by the Court in this case, and that Hakim's testimony is self-serving, biased, and "of no assistance to the Court in understanding the 'technology' involved regarding the simple device at issue in this case."

This discretionary ruling is not grounds for reversal, for we have not been shown how the trier of fact was led into error, or could reasonably have reached a different decision had the inventor's declaration been admitted. This evidentiary ruling was in accordance with the Rules, and is affirmed.

AFFIRMED

2005-1398                                                                 11